1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 CONTENT AGGREGATION SOLUTIONS LLC, a Texas limited liability company, | Case No.: 3:16-cv-00527-BEN-KSC |
| 12 | **ORDER GRANTING MOTION TO DISMISS** |
| 13          Plaintiff, | |
| 14 v. | |
| 15 BLU PRODUCTS, INC. | |
| 16          Defendant. | |
| 17 CONTENT AGGREGATION SOLUTIONS LLC, a Texas limited | Case No.: 3:16-cv-00528-BEN-KSC |
| 18 liability company, | |
| 19 | **ORDER GRANTING MOTION TO DISMISS** |
| 20          Plaintiff, | |
| 21 v. | |
| 22 HUAWEI TECHNOLOGIES CO., LTD., a China corporation, and HUAWEI | |
| 23 TECHNOLOGIES (USA), CO., LTD., a Delaware corporation. | |
| 24 | |
| 25          Defendants. | |

26
27
28

1

| | |
|---|---|
| CONTENT AGGREGATION SOLUTIONS LLC, a Texas limited liability company,<br><br>                                    Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC., a South Korean corporation, and LG ELECTRONICS (USA), INC., a Delaware corporation.<br><br>                                    Defendants. | Case No.:  3:16-cv-00529-BEN-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS** |
| CONTENT AGGREGATION SOLUTIONS LLC, a Texas limited liability company,<br><br>                                    Plaintiff,<br><br>v.<br><br>SHARP CORPORATION, a Japan corporation, and SHARP ELECTRONICS CORPORATION, a New York corporation.<br><br>                                    Defendants. | Case No.:  3:16-cv-00530-BEN-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS** |
| CONTENT AGGREGATION SOLUTIONS LLC, a Texas limited liability company,<br><br>                                    Plaintiff,<br><br>v.<br><br>SONY MOBILE COMMUNICATIONS, INC., a Japan corporation, and SONY MOBILE COMMUNICATIONS (USA), INC., a Delaware corporation.<br><br>                                    Defendants. | Case No.:  3:16-cv-00531-BEN-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS** |

3:16-cv-00530-BEN-KSC

| | |
|---|---|
| 1<br>2<br>3 | CONTENT AGGREGATION<br>SOLUTIONS LLC, a Texas limited<br>liability company, |
| 3 | Plaintiff, |
| 4 | |
| 5 | v. |
| 6 | ZTE CORPORATION, a China<br>corporation, and ZTE (USA), INC., a New |
| 7 | Jersey corporation. |
| 8 | Defendants. |

Case No.:  3:16-cv-00533-BEN-KSC

**ORDER GRANTING MOTION TO DISMISS**

This order addresses motions to dismiss filed or joined in six related patent cases filed by Plaintiff Content Aggregation Solutions, LLC ("CAS").  Plaintiff has filed identical complaints in each of the six cases, alleging direct infringement of claims 1, 15, and 16 of U.S. Patent No. 8,756,155 ("the '155 patent").  Defendant ZTE (USA), Inc. ("ZTE") was the first to move to dismiss the complaint.[1]  Defendants Huawei Technologies USA, Inc. ("Huawei"), LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LGE"), and Sony Mobile Communications (USA), Inc. ("Sony") (collectively, the "Joint Motion Defendants"[2]) then filed identical motions to dismiss. Defendants Blu Products, Inc. and Sharp Corporation and Sharp Electronics Corporation (collectively, "Sharp") joined the motions to dismiss filed by the Joint Motion Defendants.  The motions are all brought on the same grounds:  They argue that the asserted patent is invalid for lacking eligible subject matter under 35 U.S.C. § 101 and

---

[1] Plaintiff voluntarily dismissed Defendant ZTE Corporation on April 25, 2016.  ZTE (USA), Inc. is the only remaining defendant in case number 3:16-cv-00533.

[2] To be clear, Huawei, LGE, and Sony are not co-defendants.  CAS has filed a separate action against each.  However, they are represented by the same counsel, which filed identical motions to dismiss in each case.  Plaintiff referred to Huawei, LGE, and Sony as the Joint Motion Defendants in its opposition.  For the sake of clarity and efficiency, the Court adopts that moniker here.

therefore CAS's complaint fails to state a claim and must be dismissed.  Plaintiff CAS filed an opposition that addressed the ZTE and Joint Motion Defendants' motions simultaneously.

Because the same issues are presented, in the interests of judicial efficiency, the Court will address the motions to dismiss in one omnibus order.  As explained below, the Court finds that the patent claims are directed to ineligible subject matter and, thus, are invalid under § 101.  The motions to dismiss are **GRANTED.**

### BACKGROUND[3]

CAS is a Texas limited liability company with a principal place of business in Dallas, Texas.  (Compl. ¶ 1, ECF No. 1.)  CAS is the owner of the '155 patent.  (*Id.* ¶ 9.)  The '155 patent is entitled "Web Based Communication of Information with Reconfigurable Format."  (*Id.* Ex. A [hereinafter '155 patent].)  The '155 patent "teaches a system of using an Internet-aware service to form a conduit between the Internet and another device which may be a hand-held device or any other thin client, or even a regular client."  ('155 patent, Summary of Invention, 1:56-59.)

According to the Complaint, the claims of the '155 patent "are addressed, among other things, to the technical problem of how to efficiently and practically assemble a combination of different information from different sources on the Internet and return that information to a handheld device, such as a Smartphone, that on its own would have been incapable of assembling the information in a practical and useful way without modification of the different sources."  (Compl. ¶ 12.)  "The claims additionally reduce technical complexity and improve efficiency in the handheld device by allowing the aggregation to take place upon the selection of at least one indicator with a single

_____

[3] All citations are to the docket in *Content Aggregation Solutions LLC v. ZTE Corporation et al.*, No. 3:16-cv-00533.  Identical complaints have been filed in each of the six related cases.  The Court is not making any findings of fact, but rather summarizing the relevant allegations of the complaint for purposes of evaluating Defendant's motion.

actuation." (*Id.*)  Plaintiff asserts that the claimed invention is different than and superior to prior technology, and does not preempt commerce on the Internet or the use of handheld devices on the Internet.  (*Id.* ¶¶ 13-15.)

Plaintiff pleads one count of direct patent infringement under 35 U.S.C. § 271(a). Plaintiff alleges that Defendants "have infringed at least claims 1, 15 and 16 of the '155 patent by using, selling, and/or offering to sell, within the United States, and/or by importing into the United States, products, including but not limited to, smartphones and/or tablets that include Android operating systems with Google Now Cards functionality." (*Id.* ¶ 19.)  As the patent claim language is important, it is repeated here.

Claim 1 claims:

1.  A computing device, comprising:
A handheld housing and processor and display, said display displaying a plurality of different indicators, and wherein at least one of said indicators, when selected with a single actuation, selecting execution of a pre-stored sequence of actions based on said single actuation that interface with a remote internet site, takes some action on the remote internet site, and returns information from the internet site, all based on said single actuation, wherein said sequence accesses a plurality of different Internet sites, and said information is based on said plurality of Internet sites.

('155 patent, cl. 1, 15:64-16:8.)

Claims 15 and 16 are dependent claims, referring to claim 1.  Claim 15 recites:

15.  A device as in claim 1, further comprising a handheld housing and wherein said processor and display are housed by said handheld housing.

(*Id.*, cl. 15, 17:24-26.)  Claim 16 recites:

16.  A device as in claim 1, wherein said processor and display are battery driven.

(*Id.*, cl. 16, 17:27-28.)

The patent's specification explains that in one embodiment, "a client which is capable of interactive communication, and more preferably a hand-held device, may be used to obtain specified kinds of information from the Internet.  Requests are sent to a

service.  The service can be any computer which is capable of receiving requests, reformatting then [sic] into a specified form that is required by a web server, sending it, receiving the response, and reformatting that response." ('155 patent, 1:60-66.)  In another embodiment, "the hand-held device may include the user's personal information, and which can be used to allow identification, e.g. login, to a specified Internet site." (*Id.*, 2:8-10.)  "Another embodiment describes effectively do-it-yourself Internet, where a service is used to rearrange the content and the information in an Internet page, and to display the new information to the user." (*Id.*, 2:11-14.)

## LEGAL STANDARDS

### I.   Motions to Dismiss

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### II.   Patentable Subject Matter Under 35 U.S.C. § 101

Subject matter eligibility under 35 U.S.C. § 101 is a question of law that is regularly decided on the pleadings. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610, 615 (Fed. Cir. 2016) (affirming dismissal under Rule 12(b)(6)); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (affirming grant of judgment on the pleadings to defendant); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1343 (Fed. Cir. 2014) (affirming dismissal under

Rule 12(b)(6)).  Section 101 defines the subject matter eligible for patents as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," subject to limitations in the Patent Act and judicially-created exceptions.  35 U.S.C. § 101.  The Supreme Court has held that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  *Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013).  "The concepts covered by these exceptions are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'"  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (internal citation omitted).  "[T]he underlying concept is that 'patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity.'"  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352-53 (Fed. Cir. 2014) (quoting *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014)).  This case involves the abstract idea exception.

Under the Supreme Court's two-step analytical framework for analyzing whether claims are patent eligible, the court "first determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea."  *Content Extraction*, 776 F.3d at 1346 (quoting *Alice*, 134 S. Ct. at 2355).  If it is an abstract idea, the court moves to the second step.  In step two, the court considers the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application.  *Alice*, 134 S. Ct. at 2355.  The Supreme Court has described the second step as the search for an "inventive concept"—that is, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.* (internal citation omitted).

## DISCUSSION

Plaintiff's complaints allege that "at least claims 1, 15, and 16" are directly infringed.  (Compl. ¶ 19.)  Claim 1 is representative of claims 15 and 16, which are dependent on claim 1 and only add tangible component limitations to the patent.

As explained below, the Court finds that the claims are directed to an abstract idea that does not contain an inventive concept sufficient to transform them into a patent-eligible application.  Therefore, the claims of the '155 patent are patent-ineligible.

## I.  *Alice* Step One:  Abstract Idea

The first step of the *Alice* inquiry requires the court to look at the "focus" of the claims and their "character as a whole" to determine whether the claims are "drawn to the concept of" an abstract idea.  *See Alice*, 134 S. Ct. at 2356; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  "The Supreme Court has not delimited the precise contours of the 'abstract ideas' category."  *Content Extraction*, 776 F.3d at 1346.  As a result, the Supreme Court and Federal Circuit "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed Cir. 2016).  In addition to comparing claims to prior precedents, "courts considering computer-implemented inventions have taken varied approaches to determining whether particular claims are directed to an abstract idea.  For example, courts have considered whether the claims purport to 'improve the functioning of the computer itself,' which may suggest that the claims are not abstract, or instead whether 'computers are invoked merely as a tool' to carry out an abstract process."  *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, Nos. 16-CV-00925-LHK, 16-CV-00926-LHK, 2016 WL 3196657, at *10 (N.D. Cal. June 9, 2016) (quoting *Alice*, 134 S. Ct. at 2359 and *Enfish*, 822 F.3d at 1336, respectively).  Another useful tool to determine whether claims are directed to an abstract idea is "whether the claims are, in essence, directed to a mental process or a process that could be done with pen and paper."  *Id.* (citing cases).  Where the steps of the claim could be performed by a human being without a computer, the claim is likely directed to an abstract idea.  *Id.*

Defendant ZTE argues that the claims are directed to the abstract concept of retrieving and compiling data.  The Joint Motion Defendants contend that the asserted claims are directed to the abstract idea of retrieving information from multiple sources

8

based on a single action.  They support these arguments with citations to Federal Circuit authority holding that gathering, transmitting, and organizing information are abstract ideas.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions."); *Cyberfone Sys., LLC v. CNN Interactive Grp.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("Here, the well-known concept of categorical data storage, *i.e.,* the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible.").

In opposition, CAS claims that the Defendants are stripping away the language of the claims to read a few words in isolation.  CAS relies on the Federal Circuit's recent decision in *Enfish* to argue that the claims are not directed to an abstract idea.  In *Enfish*, the Federal Circuit found that it was relevant to ask "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36.  There, the patent claimed a "data storage and retrieval system for a computer memory."  *Id.* at 1336.  The Federal Circuit held that the claims were *not* directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table."  *Id.* at 1337.  Rather, the claims were "specifically directed to a self-referential table for a computer database" requiring a four-step algorithm, *id.*, which was a "specific improvement to the way computers operate," *id.* at 1336, and distinct from existing database structures, *id.* at 1337.  The court explained that the relevant claims were "not simply directed to *any* form of storing tabular data," *id.* at 1337, and did not focus "on economic or other tasks for which a computer is used in its ordinary capacity," *id.* at 1336.

In this case, CAS argues that that the patent claims are like those in *Enfish* because they focus on improvements to apparatuses (computers and computing devices), not processes.  CAS contends that "[p]rior to the '155 patent, no computer existed that had

9

the same capabilities as those claimed in the '155 patent." (Opp'n at 18.)  CAS does not describe these improved capabilities in its opposition.  Rather, CAS states that paragraphs 12 through 17 of its complaints address the specific facts regarding the improvement in computer capabilities claimed by the patent.

CAS's reliance on *Enfish* is not persuasive.  CAS focuses on the fact that the patent claims an apparatus (a "computing device"), rather than a method, and that the patent claims improve the functioning of the apparatus, making the patent akin to the patent upheld in *Enfish*.  As an initial matter, patent eligibility does not depend on the form of the claim.  *See Alice*, 134 S. Ct. at 2360 (cautioning against "interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art"); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342 (Fed. Cir. 2013) ("[P]atent eligibility does not depend on the form of the claim, whether computer-implemented innovations are claimed as a method or a system or a storage medium, whether implemented in hardware or software.  Patent eligibility does not turn on the ingenuity of the draftsman." (quoting other case)).  "The fact that the asserted claims are apparatus claims, not method claims, does not change the court's analysis.  Indeed, if that were the case, then applying a presumptively different approach to system or apparatus claims generally would reward precisely the type of clever claim drafting that the Supreme Court has repeatedly instructed the Court to ignore."  *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 523 (D. Del. 2014) (internal citations and quotation marks omitted) (apparatus claims held invalid for claiming ineligible subject matter), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1468 (2016).

In substance, the claims here are different from those held valid in *Enfish*.  The *Enfish* court emphasized the specificity of the claims, distinguishing them from claims reciting "generalized steps to be performed on a computer using conventional computer activity."  *Id.* at 1338.  The claims at issue were directed "to a specific implementation of a solution to a problem in the software arts," rather than any general form of achieving

the desired result.  822 F.3d at 1337, 1339.  "In other words," the court was "not faced with a situation where general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation."  *Id.*  Here, this Court is faced with such a situation.

The language of the claims and specification make clear that the focus of the claims is on the abstract process of retrieving and transmitting data, and that this process is performed on general-purpose, ordinary computer components.  Claim 1, which is representative of the asserted claims, describes a handheld computing device that retrieves information from a remote internet site and returns that information.  ('155 patent, cl. 1.)  Specifically, claim 1 explains that the user takes a single action, which triggers a pre-stored sequence of actions based on that single command, and then "some action" occurs on a remote Internet site, followed by the return of information from the Internet site.  ('155 patent, cl. 1.)  But the claim language is silent as to how to actually achieve the collection and transmission of information.  There are no specifics about what those pre-stored sequences of actions are, what action is taken on a remote Internet site, how information is accessed and returned from the Internet site, or what information is returned.  There is no detail about how the aim of the patent is to be achieved on the Internet beyond the idea itself.  The specification reinforces this conclusion by explaining that the "present application teaches a system of using an Internet-aware service to form a conduit between the Internet and another device."  ('155 patent, 1:56-58.)  That is, the device itself "is merely a conduit for the abstract idea."  *In re TLI Commc'ns*, 823. F.3d at 612 (finding claims directed to abstract idea where conventional technology used to implement abstract idea of classifying and storing data).  Where a claim "contains no restrictions on how the result is accomplished," but rather is directed to the abstract idea itself, the claim is not directed to patent-eligible subject matter.  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *see also Enfish*, 822 F.3d at 1337 (when claims are directed to *any* form of achieving desired result, claims are drawn to abstract idea).

Further, the patent acknowledges that the process will be performed on generic computer parts "using conventional computer activity." *Enfish*, 822 F.3d at 1338. The process is implemented on a "computing device, comprising a handheld housing and processor and display." ('155 patent, cl. 1.) The device claimed "may be a hand-held device or any other thin client, or even a regular client." (*Id.* 1:56-59.) "The thin client communicates as conventional over a channel to a service provider." (*Id.* 1:2:53-55.) "The service provider also communicates with a service. . . . The service can be a conventional Web service or other subscription service, or simply can be an interfacing program that is running on a computer at the service provider's location." (*Id.* 2:57-62.) "The service provider also includes a connection to the Internet, as conventional for such service providers, since they conventionally obtain information such as e-mail and Web content from the Internet." (*Id.* 2:64-67.) Thus, unlike the claims in *Enfish*, the claims here recite "generalized steps to be performed on a computer using conventional computer activity." *Enfish*, 822 F.3d at 1338.

The Federal Circuit has repeatedly held that patent claims focused on collecting and analyzing information, and "merely presenting the results of abstract processes of collecting and analyzing information, without more," are directed to abstract ideas. *Elec. Power Grp.*, 830 F.3d at 1353-54 (citing cases). The asserted claims here are drawn to this basic concept. The claims focus on the general, abstract processes of collecting, analyzing, and presenting information, and not a "specific asserted improvement in computer capabilities." *Enfish*, 822 F.3d at 1335. The patent claims a process that humans have long performed, but implements it on a generic Internet-connected device used in its ordinary capacity. This is not sufficient to be deemed non-abstract. *See In re TLI Commc'ns*, 823 F.3d at 612-13; *Enfish*, 822 F.3d at 1335. Accordingly, the Court holds that the asserted claims are drawn to an abstract idea under step one of the *Alice* inquiry.

## II. *Alice* Step Two:  Inventive Concept

Where, as here, the patent's claims are directed to an abstract idea, a court must

proceed to step two of the *Alice* inquiry to determine whether the claim elements individually or as an ordered combination transform the abstract idea into a patent-eligible application of that idea.  Defendants contend the patent only adds generic computer-related limitations that fail to transform the claim into an inventive concept. Plaintiff counters that certain tangible components in the claims add meaningful limitations to the patent.  CAS points to claim 1's recitation of a handheld housing, display, and "configuration of the computing device[] to communicate with a plurality of remote Internet sites after a single actuation," claim 15's refinement of the device "wherein [the] processor and display are housed by said handheld housing," and claim 16's addition of a battery.  Viewing the claims individually and in combination, the claims do not add an inventive concept.

"[T]he transformation of an abstract idea into patent-eligible subject matter 'requires more than simply stating the abstract idea while adding the words apply it.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2357).  Here, the claims simply implement the abstract idea of retrieving and transmitting information on the Internet via a generic device.  But "generic computer implementation" does not "transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2357.  Nor does implementing the abstract idea on the Internet. *Ultramercial*, 772 F.3d at 716 ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101").

The process outlined in claim 1 "comprises only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'" *Id.* (quoting *Alice*, 134 S. Ct. at 2357).  As noted above and explained further here, the components used to execute the abstract process perform "well-understood, routine, conventional activities previously known to the industry," which is also insufficient to add an inventive concept. *Alice*, 134 S. Ct. at 2359.  Claim 1 includes a "handheld housing," but the specification confirms that accessing information from the Internet through a device with a handheld housing was known and conventional at the time of the

patent. ('155 patent, 1:33-36.)  Neither the claims nor specification requires any particular features in the handheld housing.  Indeed, the handheld housing is not integral to the invention because the specification admits that the device used to implement the abstract process may be a "thin client, or even a regular client."  (*Id.*, 1:59; *see also id.*, 8:19-20 ("other clients, including personal computers, may be used").)  Similarly, the claims also include a "processor" and "display" but neither need any particular capability beyond their ordinary functions.  The specification again confirms that the processor and display are generic computer components.  (*Id.*, 12:11-13 ("The computer 900 includes a processor 905 which may be a special-purpose processor or may simply operate according to stored instructions."); *id.*, 8:66-67 ("icons may be provided for programs and other conventional type display functions of a hand-held").)

The claims require "execution of a pre-stored sequence of actions," that is "based on a single actuation" of a displayed indicator, resulting in "some action" being taken on a remote Internet site and returning information from the Internet site to the device, "wherein said sequence accesses a plurality of different Internet sites, and said information is based on said plurality of Internet sites."  ('155 patent, cl. 1.)  In other words, upon a single command, a prestored sequence of actions accesses and returns information based on a plurality of Internet sites.  But this likewise does not add an inventive concept.  The patent acknowledges that manually accessing and obtaining information from the Internet was already a "routine, conventional activity previously known to the industry."  *Alice*, 134 S. Ct. at 2359.  Indeed, as the Joint Motion Defendants note, the "execution of prestored code in response to user input is the most basic and conventional of computing concepts."  (Joint Mot. at 19.)  The specification also explains that the "pre-stored sequence of actions" is based on the user's previous actions, thus simply automating manual activity.  (*See* '155 patent, Abstract ("The scripts can be formed by monitoring the actions of a user and storing their actions in a memory. That sequence of keystrokes can later be used to access the same web site and obtain updated information."), 3:48-50 ("Also stored within the database is a probability, for the

14

specific user, of what they will want to do.  This may be based on the user's previous actions."); *see also* Joint Mot. at 14 n.4 (citing portions of specification regarding pre-stored sequence of actions).)  The automation of human activity using conventional technology is not an inventive concept.  *See Content Extraction*, 776 F.3d at 1348. Finally, the addition of general, physical components in dependent claims 15 and 16 do not transform the claims into an inventive concept.  *In re TLI Commc'ns*, 823 F.3d at 613 ("It is well-settled that the mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.").

The Court considers the Federal Circuit's recent decision in *Electric Power Group, LLC v. Alstom S.A.* instructive.  There, the court explained:

> [T]he claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications.  The claims at issue do not require any nonconventional computer, network, or display components, or even a "non-conventional and non-generic arrangement of known, conventional pieces," but merely call for performance of the claimed information collection, analysis, and display functions "on a set of generic computer components" and display devices. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015-1763, 2016 WL 3514158, at *6-7 (Fed. Cir. June 27, 2016).
>
> Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information. . . . We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are "insufficient to pass the test of an inventive concept in the application" of an abstract idea.

830 F.3d 1355.  This Court finds that the same reasoning applies equally as well in this case.

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), does not compel a different result.  In *DDR Holdings*, the court found that the claims were patent eligible under § 101.  "[T]he claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer

networks." *Id.* at 1257.  When a consumer clicks on a third-party advertisement on a host website, the consumer is directed to an automatically generated hybrid website instead of being directed to the third-party's website.  *Id.*  The hybrid website looks like the host page, but contains the third-party's product information associated with the advertisement.  *Id.*  This allows the host to retain the consumer rather than losing them to the third-party's website.  *Id*.

The *DDR Holdings* court emphasized, though, that "not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* at 1258.  Rather, the claims at issue recited a specific way to "override[] the routine and conventional sequence of events ordinarily triggered" on the Internet.  *Id.*  The claims "specif[ied] how interactions with the Internet are manipulated to yield a desired result" different from what would normally occur.  *Id.*  The claims were *not* directed at "applying a known business process to the particular technological environment of the Internet."  *Id.* at 1259.

Unlike the claims in *DDR Holdings*, the claims here do not override any routine sequence of events on the Internet.  Instead, the claims are directed to implementation of a known business practice on the specific platform of the Internet through generic steps using conventional computer components.  This is not inventive.  *See, e.g.*, *Ultramercial*, 772 F.3d at 716 (narrowing an "abstract idea to a particular technological environment . . . is insufficient to save a claim").

Plaintiff tries to make the '155 patent claims like those in *DDR Holdings*, arguing that the claims "provide a technological solution to a problem that arises in the computer context." (Opp'n at 21.)  It points to the allegations in its complaints asserting that the patent claims devices that "efficiently and practically assemble a combination of different information from different sources on the Internet and return that information to a handheld device . . . that on its own would have been incapable of assembling the information in a practical and useful way without modification." (Compl. ¶ 12.)  The complaints also state that the claims "reduce technical complexity and improve efficiency in the handheld device."  (*Id.*)  Notwithstanding that such conclusory allegations may be

ignored on a motion to dismiss, Federal Circuit authority is clear that "improved speed or efficiency inherent with applying the abstract concept on a computer" is insufficient to provide an inventive concept. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (citing cases). Moreover, although the specification mentions problems with viewing "unoptimized" webpages on handheld devices and implies that the patent solves this problem ('155 patent, 1:31-45), the claims themselves are silent about how to address this challenge. Rather, the claims describe a general process of retrieving and returning information from the Internet to a generic computing device. As already explained, this is not sufficient to supply an inventive concept.

Plaintiff also attaches a declaration from the inventor, Scott C. Harris, that purportedly addresses "the technological problems and improvements caused by the invention." (Opp'n at 21.) However, such a declaration is inappropriate to consider on a motion to dismiss. On such motions, a court may only consider the well-pleaded allegations of the complaint, documents incorporated by reference, and judicially noticed facts. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Harris declaration meets none of these criteria, and thus the Court does not consider it. *See Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-cv-682, 2016 WL 2847975, at *2 (E.D. Tex. May 16, 2016) ("A court ordinarily does not look beyond the pleadings in ruling on a 12(b)(6) motion. In particular, when patent claims on their face are plainly directed to an abstract idea, a court may properly assess patent-eligibility under § 101 at the pleading stage." (citing cases)).

In conclusion, considering the claim elements individually and as an ordered combination, the asserted claims do not contain an inventive concept.

## CONCLUSION

For the reasons set forth above, the asserted claims of the '155 patent are invalid as patent-ineligible under § 101. The motions to dismiss are **GRANTED.**

The only remaining question is whether Plaintiff should be given leave to amend

its complaints.  The '155 patent has 27 total claims.  Plaintiff argues that the 24 claims not specifically asserted in its complaints remain unchallenged and therefore valid. However, where all the claims are "substantially similar and linked to the same abstract idea," a court need not conduct a specific analysis of each claim.  *Content Extraction*, 776 F.3d at 1348 (affirming dismissal of all claims as patent-ineligible despite district court only analyzing representative claims).  Here, independent claim 1 is not only representative of the specifically-asserted dependent claims 15 and 16, it is also representative of all other claims.  All of the claims "recite little more than the same abstract idea" of retrieving and transmitting information, with any additional limitations confined to "well-known, routine, and conventional" technology.  *Id.* at 1348-49. Moreover, Plaintiff never identified any claims that it believes would not be fairly represented by claim 1.  *See id.* at 1348.  Therefore, the Court need not address each claim of the patent and, instead, finds all claims of the '155 patent invalid.  Leave to amend would be futile because the flaw lies in Plaintiff's patent as a matter of law rather than its pleading.

**IT IS SO ORDERED.**

Dated:  November 29, 2016

Hon. Roger T. Benitez
United States District Judge

3:16-cv-00530-BEN-KSC